S & G NEWS, INC., Plaintiff,

v.

CITY OF SOUTHGATE, Defendant.

No. 86–CV–70352–DT.

United States District Court, E.D. Michigan, S.D.

July 3, 1986.

Taylor & Rubin, P.C. by Stephen M. Taylor, Southfield, Mich., for plaintiff.

Edward Zelenak, Lincoln Park, Mich., for defendant.

## OPINION

GILMORE, District Judge.

### I

This is a declaratory judgment action in which plaintiff seeks to determine the constitutionality of certain provisions of the zoning ordinance of defendant City of Southgate. The zoning provisions in question permit adult uses (that is, adult bookstores and theaters) in C–3 commercial districts, if they meet certain locational requirements. These requirements provide that two such adult uses may not locate within 1,000 feet of each other, and none may be within 500 feet of a building containing a residential dwelling. The zoning provisions further provide that one must apply for, and receive, special approval for adult uses.

Plaintiff moved for a preliminary injunction and subsequently the parties stipulated that the hearing on the motion for preliminary injunction would be a final hearing on the merits. Such a hearing has been held, and the Court proceeds to decision on the merits.

The challenged portions of the Southgate ordinance are Section 5.11(4) and (5), which define adult uses [1], Section 5.153, which permits adult uses in C–3 districts where the uses receive a special approval and meet with specific location restrictions [2], and Section 5.74, which provides for the procedures to be used in applications for special approval uses. Section 5.74 requires that the City Plan Commission give notice when it has received an application for a special approval. Either the applicant, the Plan Commission, or a property owner within 300 feet of the proposed use may request a public hearing. Section 5.74(3) and (4) set out standards to apply to applications for special approval [3].

1. Section 5.11

(4) ADULT BOOKSTORE. An establishment having as a substantial or significant portion of its stock in trade, books, magazines, and other periodicals which are distinguished or characterized by their emphasis on matter depicting, describing or relating to "Specified Sexual Activities" or "Anatomical Areas" (as defined in this Ordinance), or an establishment with a segment or section devoted to the sale or display of such material. (Amended 1/30/74).

(5) ADULT MOTION PICTURE THEATER. An enclosed building used for presenting distinguished or characterized by by an emphasis on matter depicting, describing or relating to "Specified Sexual Activities" or "Anatomical Areas" (as defined in this Ordinance), for observation by patrons therein.

"Specified Sexual Activities" or "Anatomical Areas" for the purpose of this Ordinance are defined as follows:

a. Human genitals in a state of sexual stimulation or arousal;

b. Acts of human masturbation, sexual intercourse or sodomy;

c. Fondling or other erotic touching of human genitals, public (sic) region, buttock or female breast.

And "Specified Anatomical Areas" as defined:

a. Less than completely and opaquely covered: (a) human genitals, pubic region, (b) buttock, and (c) female breast below a point immediately above the top of the areola; and

b. Human male genitals in a discernibly turgid state, even if completely and opaquely covered. (Amended 1/30/74)

2. Section 5.153 *Permitted Uses After Special Approval.* The following uses may be permitted by the City Plan Commission after public hearing and review of the proposed site plan, subject to specific standards for each particular land use hereinafter itemized and subject to the general standards and processing procedures to guide the actions of the City Plan Commission as specified in Section 5.74. In instances where a Special Approval application is denied by the City Plan Commission, the applicant may appeal to the City Council, provided that the appeal request is filed within fifteen (15) days of the date of City Plan Commission denial, and provided further that the applicant submits the appeal fee as determined by City Council. The City Council shall then hold its own public hearing and reach a decision on the Special Approval request. A two-thirds favorable vote is necessary for approval of the Special Approval application.

(1) *Special Approval Uses.* Adult Book Store, Adult Motion Picture Theater, Cabaret.

(2) *Location Requirements.*

(a) Not more than two of the above named uses are permitted within one thousand (1,000) feet of each other unless the Board of Zoning Appeals concludes that the following criteria are satisfied: That the proposed will not be contrary to the public interest or injurious to nearby properties; proposed use will not enlarge the development of a skid row area.

(b) None of the above uses are permitted within five hundred (500) feet of any building containing a residential dwelling unit except that this provision may be waived if the person applying for the waiver shall file with the City Plan Commission petition which indicates approval of proposed regulated use by at least 50 percent of the persons owning, residing or doing business within a radius of five hundred (500) feet of the proposed use. (Amended 1/30/74)

3. Section 5.74

3. *Standards* No special approval shall be granted by the City Plan Commission unless the special use:

a. Will promote the use of land in a socially and economically desirable manner for those persons who will use the proposed land use or activity; for those landowners and residents who are adjacent; and for the City as a whole.

b. Is necessary for the public convenience at that location.

c. Is compatible to adjacent land uses.

d. Is so designed, located and proposed to be operated by the public health, safety and welfare will be protected.

e. Can be adequately served by public services and facilities without diminishing or adversely affecting public services and facilities to existing land uses in the area.

f. Will not cause injury to the value of other property in the neighborhood in which it is located.

g. Will protect the natural environment and help conserve natural resources and energy.

h. Is within the provisions of uses requiring special approval as set forth in the various

## II

The parties have stipulated to the following facts:

1. The City of Southgate is located to the southwest of the City of Detroit, has a population of 30,647 and comprises an area of 6.9 square miles.

2. Plaintiff S & G News, Inc., is a Michigan corporation and occupies business premises located at 12755 Eureka Road in the City of Southgate, County of Wayne, State of Michigan.

3. The plaintiff intends to operate the aforesaid premises as a business enterprise doing business as Metro News and Video.

4. Plaintiff intends to offer for sale books, magazines, newspapers and other periodicals, video tape cassettes, motion picture films, novelties, tobacco, cigarettes and various and other sundry goods. In addition, plaintiff intends to locate on its premises numerous individual coin-operated viewing booths, each of which will contain an individual television set operated by means of a video tape recorder similar in all respects to a closed circuit TV system.

5. Some, but not all, of the press materials plaintiff intends to offer to the public treat sex and nudity in an honest and forthright manner, may be deemed "sexually explicit", and may constitute so-called "adult" materials.

6. Generally, the zoning ordinance of the City of Southgate divides the City into residential, business, commercial and industrial districts.

7. The commercial districts are divided into C–1, C–2 and C–3 zoned districts.

8. The Southgate Zoning Ordinance prohibits any building or land being used for any purpose other than that permitted in the district in which the building or land is located. (Sec. 5.45)

9. The zoning ordinance permits all types and kinds of commercial uses to locate in C–1 and C–2 commercial districts as a matter of right, including bookstores, hotels and motels, barbershops, food stores, automobile showrooms and theatres. (Sec. 5.127 *et seq.* and Sec. 5.138 *et seq.*)

10. The zoning ordinance of the City of Southgate classifies an "adult bookstore" and an "adult motion picture theatre" as a "special approval use". (Sec. 5.153(1))

11. A "special approval use" is not permitted to locate as a matter of right in any zoned district within the City of Southgate. An "adult bookstore" and an "adult motion picture theatre" is permitted only after special approval and only in a C–3 commercial district. (Sec. 5.153, *et seq.*)

12. As a permitted use after special approval, an "adult bookstore" or an "adult motion picture theatre" must conform to the standards and procedures specified in Section 5.74 of the zoning ordinance of the City of Southgate.

13. In addition to the general standards found in Section 5.74, there are certain locational requirements which prohibit more than two (2) such uses from locating within one thousand (1,000) feet of each other and further, which prohibit a single such use from locating within five hundred (500) feet of any building containing a residential dwelling unit.

14. These provisions of the zoning ordinance of the City of Southgate applicable to "adult bookstores" and "adult motion picture theatres" were adopted by the city

zoning districts herein and is in harmony with the purposes and conforms to the applicable regulations of the zoning district in which it is to be located.
i. Is related to the valid exercise of the City's police power and purposes which are affected by the proposed use or activity.
4. *Approval.* The City Plan Commission may deny, approve or approve with conditions necessary to insure that public services and facilities affected by a proposed land use or activity will be capable of accommodating increased service and facility loads caused by the land use or activity, to protect the natural environment and conserve natural resources and energy, to insure compatibility with adjacent uses of land, and to promote the uses of land in a socially and economically desirable manner. The decision on a special approval shall be incorporated in a statement of conclusions relative to the specific land use under consideration. The decision shall specify the basis for the decision, and any conditions imposed.

of January 30, 1974 and have remained unchanged since that date.

15. Plaintiff's building, located at 12755 Eureka Road, is located in a C–2 zone.

16. Plaintiff's building is not within one thousand (1,000) feet of another "adult bookstore" or "adult motion picture theatre".

17. On January 17, 1986, plaintiff filed an *Application for Use of Permit and Certificate of Occupancy.*

18. On February 11, 1986, plaintiff, S & G News, Inc., received a letter from the city of Southgate dated February 5, 1986 and signed by Jan A. Kornychuk, Building Inspections Director, advising plaintiff that the aforesaid *Application For Use Permit and Certificate of Occupancy* to use the premises at 12755 Eureka Road, was denied for reason that, "adult bookstore and adult entertainment are not specifically permitted uses in a C–2 zoned district."

19. Ordinance No. 339, Section 7.195 of the Code of City of Southgate, does not apply to plaintiff.

20. The company of Parkins, Rogers and Associates, Planning and Urban Renewal Consultants, reviewed the City of Detroit zoning ordinance applicable to skid row provisions for the purpose of determining whether it could be used in Southgate and then submitted to the city by letter dated November 12, 1973, a proposed zoning ordinance revision which was subsequently adopted by the city on January 30, 1974.

21. The City of Southgate comprises 4,400 acres of land. 109 acres of land are zoned C–3, 2.3 per cent of the land area of the said municipality.

22. Under no circumstances may an "adult bookstore" or an "adult motion picture theatre" locate in the City of Southgate without the discretionary approval of the administrative officials of the City of Southgate: to wit; "special approval" or variance.

23. Prior to and at the time of the adoption of Ordinance No. 205 on January 30, 1974, (now codified as Section 5.153 et seq.) neither the Southgate City Plan Commission nor the city council had before them, and did not consider, any of the studies, findings, reports, affidavits or testimony prepared by and/or presented to the legislative body of the City of Detroit prior to the enactment of the City of Detroit "regulated use" zoning ordinance.

### III

Controlling authority in this case is found in two Supreme Court opinions dealing with the constitutionality of zoning ordinances, *Young v. American Mini Theaters, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), *reh'g denied,* 429 U.S. 873, 97 S.Ct. 191, 50 L.Ed.2d 155 (1976), and *City of Renton v. Playtime Theatres, Inc.,* —— U.S. ——, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), *reh'g denied,* —— U.S. ——, 106 S.Ct. 1663, 90 L.Ed.2d 205.

In *Young,* the Supreme Court upheld the Detroit zoning ordinance upon which the Southgate ordinance, at issue here, was modelled. The Detroit ordinance contained the same definition of adult bookstores and adult motion picture theaters as the Southgate ordinance, forbade two adult uses to locate within 1,000 feet of each other, and forbade any adult use to locate within 500 feet of a residential area. The purpose was to disperse adult uses throughout the City and prevent the development of any one "skid row."

The *Young* Court rejected a claim that the ordinance was void for vagueness and also rejected a claim that the zoning ordinance constituted a prior restraint:

> The ordinances are not challenged on the ground that they impose a limit on the total number of adult theaters which may operate in the city of Detroit. There is no claim that distributors or exhibitors of adult films are denied access to the market, or conversely, that the viewing public is unable to satisfy its appetite for sexually explicit fare. Viewed as an entity, the market for this commodity is essentially unrestrained.

It is true, however, that adult films may only be exhibited commercially in licensed theaters. But that is also true of all motion pictures. The city's general zoning laws require all motion picture theaters to satisfy certain locational as well as other requirements; we have no doubt that the municipality may control the location of theaters as well as the location of other commercial establishments.... The mere fact that the commercial exploitation of material protected by the First Amendment is subject to zoning and other licensing requirements is not a sufficient reason for invalidating these ordinances.

*Id.* 427 U.S. at 62, 96 S.Ct. at 2448.

The Court further said in a footnote: "Reasonable regulations of the time, place, and manner of protected speech, where those regulations are necessary to further significant governmental interests, are permitted by the First Amendment." *Id.* at 62, n. 18, 96 S.Ct. at 2449, n. 18.

*City of Renton v. Playtime Theaters, supra,* involved a zoning ordinance that prohibited adult theaters from locating within 1,000 feet of any residential zone, dwelling, church, park or school. Unlike the Detroit ordinance, the effect of the *Renton* ordinance was to concentrate adult uses, not to disperse them. The Court reaffirmed the approach taken in *Young* by holding that, since the ordinance did not ban adult uses but only imposed locational restrictions, it was properly analyzed as a time, place and manner restriction. The Court held that content-neutral time, place and manner restrictions are constitutional as long as they are designed to serve a substantial government interest and as long as they do not unreasonably limit alternative avenues of communication.

The Court held that in fact the *Renton* ordinance was content neutral. It did not grant or deny a forum based on the acceptability or controversiality of the expression. Rather, it aimed at controlling undesirable secondary effects on neighborhoods associated with adult uses.

The Court further held that the *Renton* ordinance served a substantial government interest since *Young* had established that a city's interest in preserving the quality of urban life was entitled to high respect. The Court held that the City of Renton was not required to conduct its own studies of the effect of adult uses; rather, Renton was entitled to rely on the experience of neighboring Seattle. In particular, Renton was entitled to rely on findings reported in *Northend Cinema Inc. v. City of Seattle,* 90 Wash.2d 709, 585 P.2d 1153 (1978) *cert. denied,* 441 U.S. 946, 99 S.Ct. 2166, 60 L.Ed.2d 1048 (1979), which reported testimony regarding Seattle's experience with adult uses. The Court said:

> The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses.

*Id.,* 106 S.Ct. at 931, 89 L.Ed.2d at 40.

Finally, the Court found there was no unreasonable restriction of alternative means of communication since roughly 5 per cent of the city was zoned for adult uses. It rejected the argument that expression was unreasonably restricted because there were no "commercially available" sites within the zoned area:

> That respondents must fend for themselves in the real estate market, on an equal footing with other prospective purchasers and lessees, does not give rise to a First Amendment violation.... [W]e have never suggested that the First Amendment compels the Government to ensure that adult theaters, or any other kinds of speech-related business for that matter, will be able to obtain sites at bargain prices.

*Id.,* 106 S.Ct. at 932, 89 L.Ed.2d at 42.

## IV

With these teachings of the Supreme Court in mind, the Court turns to the Southgate ordinance.

■ First, as to Sections 5.11(4) and (5) of the ordinance, which define the terms "adult bookstore", "adult motion picture theater", and other relevant terms, the Court finds these sections to be constitutional. Virtually the same provisions were upheld in *Young*, and very similar definitions were recently upheld in this district in *15192 Thirteen Mile Road, Inc. v. City of Warren*, 626 F.Supp. 803 (E.D.Mich.1985).

■ Second, the Court finds that the locational restrictions found in Section 5.153 of the ordinance are constitutional as reasonable time, place and manner restrictions. This section restricts adult uses to C–3 commercial districts where the use has received special approval, and where it meets the locational requirements. *Young* and *Renton* require the Court to determine whether the ordinance is content-neutral, whether it serves a substantial government interest, and whether it unreasonably restricts alternative means of communication.

The Court finds that the ordinance is content neutral. It is almost identical in its locational restrictions to the ordinances found to be content neutral in *Young* and *Renton*, and does not grant or deny a forum based on acceptability or controversiality of the expression. Rather, the ordinance seeks, as did those in *Young* and *Renton*, to prevent the undesirable secondary effects associated with adult uses.

It can hardly be doubted that the preservation of the quality of urban life and the control of deleterious side effects of adult uses is a substantial government interest, and the Supreme Court has made it clear in *Renton* and *Young* that a city's interest in preserving the quality of urban life is entitled to high respect.

The Court also finds that Southgate clearly allows sufficient alternative means of expression, since adult uses are allowed in C–3 commercial districts, which comprise 2.3 per cent of the land in Southgate. Plaintiffs do not contend in this case that commercially viable sites are unavailable within the C–3 zone.

■ Plaintiff further argues that there must be an adequate factual basis to believe that the ordinance addresses the city's governmental interests in its time, place and manner restrictions. However, *Renton* has made clear that a city need not conduct its own independent study or gather its own evidence on the effect of adult uses on urban neighborhoods. It is entitled to rely on the experience of other municipalities, and in the present case the City of Southgate relied on the experience of Detroit through consultation with its urban renewal consultants, Parkins, Rogers and Associates. Thus, the Court finds Section 5.153 and its locational requirements to be a valid time, place and manner restriction constitutional under the authority of *Young* and *Renton*.

Finally, as to Section 5.74, which provides the mechanism for special approval required for adult uses, the Court notes that a similar procedure was recently held to be unconstitutional in *15192 Thirteen Mile Road, Inc. v. City of Warren, supra.* The Court notes that the lack of timeliness and specific guidelines in this section arguably may vest undue discretion in local officials.

■ However, the Court finds plaintiff here does not have standing to raise an objection to this section of the zoning ordinance, and the Court declines to rule on the constitutionality of this section. The special approval provision applies to potential adult uses located in C–3 commercial districts. Plaintiff is located in a C–2 district, and has made no attempt to move to a C–3 district or to apply for a special approval use.

The Court is aware that normally-strict standing requirements are, in certain contexts, relaxed in cases involving the First Amendment. However, this case is not an appropriate one for such an exception to the standing rules. In *Young*, the Supreme Court addressed the issue of the assertion of third party rights in the context of zoning ordinances aimed at adult uses, and said:

On several occasions we have determined that a defendant whose own speech was unprotected had standing to challenge the constitutionality of a statute which purported to prohibit protected speech, or even speech arguably protected. This exception from traditional rules of standing to raise constitutional issues has reflected the Court's judgment that the very existence of some statutes may cause persons not before the Court to refrain from engaging in constitutionally protected speech or expression. See *Broadrick v. Oklahoma*, 413 U.S. 601, 611–14 [93 S.Ct. 2908, 2915–17, 37 L.Ed.2d 830]. The exception is justified by the overriding importance of maintaining a free and open market for the interchange of ideas. Nevertheless, if the statute's deterrent effect on legitimate expression is not "both real and substantial," and if the statute is "readily subject to a narrowing construction by the state courts," see *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216, [95 S.Ct. 2268, 2276, 45 L.Ed.2d 125] the litigant is not permitted to assert the rights of third parties.

*Id.*, 927 U.S. at 60, 96 S.Ct. at 2447.

Here, plaintiffs have not made any showing that the special approval procedure has created, or may create, a real and substantial deterrent effect to them. Nor is it obvious that the potential defects in the procedure, the lack of timeliness and the possibly vague criteria, could not be remedied by a narrowing construction in the state courts. Thus, plaintiff has failed to establish standing to assert the rights of hypothetical persons not before the Court.

V

■ In any case, even if the plaintiffs did have standing to challenge the special approval procedure, and even if this Court were to hold the procedure unconstitutional, the unconstitutional portion of the ordinance would be severable, and the remaining portion of the ordinance would remain in force. The City of Southgate's zoning ordinance includes a severability clause that provides for the survival of the remaining sections of an ordinance if any part is found to be invalid:

5.243. *Validity.* This Chapter and the various articles, sections, paragraphs, and clauses thereof, are hereby declared to be severable. If any article, section, paragraph or clause is adjudged unconstitutional or invalid, it is hereby provided that the remainder of the Chapter shall not be affected thereby.

The locational requirements that adult uses be located in C–3 areas, not within 1,000 feet of each other, and not within 500 feet of any building containing a residential dwelling, can clearly stand alone, and, thus, the special use approval procedure is severable under *Record Revolution No. 6, Inc. v. City of Parma*, 638 F.2d 916, (6th Cir. 1980), *vacated on other grounds*, 451 U.S. 1013, 101 S.Ct. 2998, 69 L.Ed.2d 384 (1981). There, the Court said:

The power of a Federal Court to sever sections or phrases from state legislation poses a slightly different problem of interpreting state law. In anticipation of litigation on the constitutionality of legislation, a state legislature or city counsel may provide expressly in the legislation for severability in the event that only parts of the legislation are declared unconstitutional. The task of the federal court, absent a controlling state decision, is to ascertain whether the unconstitutional parts of the legislation are so interwoven with the remainder of the statutes that the remainder cannot stand alone. This is a question of the legislative intent and the interpretation of the legal effect of the remainder of the legislation standing by itself. *Champlin Refining Co. v. Corporation Comm'n of Oklahoma*, 286 U.S. 210, 234–35, 52 S.Ct. 559, 564–65, 76 L.Ed. 1062 (1932; *Dorchy v. Kansas*, 264 U.S. 286, 290–91, 44 S.Ct. 323, 324–25, 68 L.Ed. 686 (1924). *See Emmons v. Keller*, 21 Ohio St.2d 48, 254 N.E.2d 687 (1970).

*Id.* at 926–27.

It is clear in this instance that the legislative intent of the City Council was to make

severable any portion of the ordinance found to be unconstitutional.

In addition, this Court must follow the rule of partial invalidity set forth in *Brockett v. Spokane Arcades, Inc.*, 472 U.S. ——, 105 S.Ct 2794, 86 L.Ed.2d 394 (1985). There, the Supreme Court held that a federal court should never extend its invalidation of a statute further than necessary to dispose of the case before it. This case can be disposed of by finding that the section relating to special approval is severable, as it clearly is. Therefore, the Court should not reach the validity of the special approval provisions.

In sum, the Court declines to reach the question of the constitutionality of the special approval procedure in the Southgate ordinance since plaintiff has no standing to raise the question, and since that section is clearly severable, if it is unconstitutional. The rest of the challenged ordinance is found to be a valid and constitutional time, place and manner restriction, and a permanent injunction will be denied.

This opinion constitutes the findings of fact and conclusions of law required by Fed.R.Civ.P. 52(a).