**M.J. ENTERTAINMENT ENTERPRISES, INC., d/b/a The Starlight Plaintiff,**

v.

**The CITY OF MOUNT VERNON, New York, a Municipal Corporation; and Soraya Ben–Habib, As First Deputy Commissioner of the Department of Buildings of the City of Mount Vernon Defendants.**

**No. 02 CIV.6367(CM).**

United States District Court, S.D. New York.

Nov. 21, 2002.

---

Daniel A. Silver, Law Office of Daniel A. Silver, New Britain, CT, for Plaintiff.

## MEMORANDUM DECISION PARTIALLY GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF STANDING

MCMAHON, District Judge.

Plaintiff M.J. Entertainment Enterprises, Inc. ("M.J.Entertainment") has sued the City of Mount Vernon and Soraya Ben–Habib, Mount Vernon's First Deputy Commissioner of the Department of Buildings (collectively "Mount Vernon"), claiming two separate violations of the First Amendment. Mount Vernon has moved to dismiss both claims for lack of standing. I rule that M.J. Entertainment may proceed to prosecute Count I, but I dismiss Count II.

## BACKGROUND

### A. *The Dispute*

M.J. Entertainment runs a bar called The Starlight in Mount Vernon, New York. M.J. Entertainment has reconsidered its business plan for The Starlight and would like to offer a new type of entertainment at the bar—topless dancing. The Starlight is located, however, in an area where the Mount Vernon Zoning Code prohibits such a land use.

### B. *The Mount Vernon Zoning Code*

The Mount Vernon Zoning Code establishes six types of non-residential zoning districts: (1) Neighborhood Business, (2) Office Business, (3) Downtown Business, (4) Commercial Business ("CB"), (5) Landscaped Industrial, and (6) Industry ("I"). Mount Vernon Code § 267–18. The Code lists for each zoning district a set of (a) "permitted principal uses," and (b) "uses

allowed by special permit."[1] A land use is categorically allowed in any district in which it is a "permitted principal use." In contrast, the Mount Vernon Planning Board ("Board") must approve "special permit uses" on a case-by-case basis. *See* Mount Vernon Code §§ 267–24. Those seeking approval for a special permit use must submit an application to the Board, and the Board must then hold a public hearing. *Id.* at § 267–26. In determining whether to approve a special permit use, the Board must apply certain substantive standards, such as whether "[o]perations in connection with any special permit use will not be more objectionable to nearby property by reason of noise, traffic, fumes, vibration or other such characteristics than would be the operations of permitted uses not requiring a special permit." *Id.* at § 267–27(C).

In addition, the Code requires the Board to apply more particularized standards to certain "specific special permit uses." *See* Mount Vernon Code § 267–28. Land uses involving radio towers must comply with specific requirements, for example, as must land uses involving "motor vehicle service stations." Running a bar where women dance topless is also a "specific special permit use." *Id.* at § 267–28I.

### C. *The Starlight's Zoning*

The Starlight is a "bar" located in the "CB" Zoning District.[2] Running a bar is a "principal permitted use" in the "CB" Zoning District. The Code does not list "adult live entertainment business"—defined in relevant part as a "bar . . . that features live performances . . . that are characterized by the exposure of specified areas or specified sexual activities whether or not the live performances are considered incidental to the primary operations of the business," Mount Vernon Code § 267–4—as either a "permitted principal use" or a "special permit use" in the "CB" Zoning District. This omission effectively prohibits plaintiff from operating a topless bar at The Starlight's present location.

The Code only lists "adult live entertainment business" as a "special permit use" in the "I" Zoning District. In addition, "adult live entertainment business" is a "specific special permit use" under Section 267–28I, and is therefore subject to particular conditions. Such establishments may not exceed 5,000 square feet of floor space, for example, or be located within 500 feet of any place of worship. Mount Vernon Code § 267–28I(7). In addition, topless bars are prohibited from "conducting performances or creating viewing areas that are conducted out-of-doors and/or are wholly or partially visible from any public right-of-way." *Id.* at § 267–28I(4). Plaintiff alleges that there is no place within the "I" Zoning District that does not run afoul of some said particular condition, so that the law effectively bans topless dancing anywhere in the city.

### DISCUSSION

#### A. *Standing*

M.J. Entertainment must satisfy three requirements to establish standing under

---

1. The Code also allows "accessory uses," within each type of zoning district. "Accessory uses" are defined as "[u]ses and structures which are clearly incidental and customarily accessory to the permitted principal use on the lot on which they are located." *See, e.g.,* Mount Vernon Code § 267–18(D)(2). These provisions are not relevant to the case at hand.

2. The Code defines a "bar" as "[a] business enterprise primarily engaged in the retail sale of alcoholic beverages, such as beer, wine or liquor to patrons seated at a table or counter, served for consumption on the premises." Mount Vernon Code § 267–4.

Article III. *See, e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). First, it must demonstrate that it has "suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* Second, it must establish "causation—a 'fairly ... trace [able]' connection between the alleged injury in fact and the alleged conduct of the defendant." *Vermont Agency of Natural Res. v. U.S. ex rel. Stevens,* 529 U.S. 765, 771, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000). Third, it must demonstrate that it "is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Laidlaw Envtl. Servs.,* 528 U.S. at 180–81, 120 S.Ct. 693. "These requirements together constitute the 'irreducible constitutional minimum' of standing, which is an 'essential and unchanging part' of Article III's case-or-controversy requirement." *Vermont Agency of Natural Resources,* 529 U.S. at 771, 120 S.Ct. 1858 (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559–60, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

In addition to this constitutional minimum, standing also encompasses certain "prudential" requirements that the Supreme Court has developed "on its own accord and applied in a more discretionary fashion as rules of judicial 'self-restraint' further to protect, to the extent necessary under the circumstances, the purpose of Article III." *Sullivan v. Syracuse Hous. Auth.,* 962 F.2d 1101, 1106 (2d Cir.1992). "Pursuant to the doctrine of prudential standing, a court must ask whether a plaintiff's claim rests on the legal rights of a third party, asserts only a generalized grievance, or asserts a claim that falls outside the zone of interests protected by the legal provision invoked." *Center for Reproductive Law and Policy v. Bush,* 304 F.3d 183, 196 (2d Cir.2002).

### B. Plaintiff Has Standing to Prosecute Count I

#### 1. The Substantive Claim

In Count I, M.J. Entertainment argues that the Mount Vernon Zoning Code is unconstitutional because it limits adult entertainment to such an extent that it violates the First Amendment. M.J. Entertainment's argument is, in essence, that the limitation of topless dancing to the "I" Zoning District, together with the "specific special permit use" restrictions that apply to topless dancing land uses, amounts to a total ban on adult entertainment uses in Mount Vernon. Put slightly differently, plaintiff argues that the "I" Zoning District is already a small portion of Mount Vernon, and further argues that there is no location within the "I" Zoning District that can also meet the Zoning Code's other requirements—for example, that it be located further than 500 feet from the "property line of any residential district, parks, schools, places of worship, community centers, youth services, day-care centers, nursery schools or museums within the city or in any adjoining municipality." Mount Vernon Code § 267–28I(1)(7).

These restrictions, M.J. Entertainment argues, run afoul of *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), which holds that municipal ordinances designed to restrict the use of land for the purposes of adult entertainment must "not unreasonably limit alternative avenues of communication." *Id.* at 47, 106 S.Ct. 925. The determination whether reasonable alternative avenues of communication exist turns on "the physical and legal availability of alternative sites within the municipality's borders and whether those sites are part of an actual real estate market." *Hickerson v. City of New York,* 146 F.3d 99, 104

(2d Cir.1998) (quoting *Stringfellow's of New York, Ltd. v. City of New York*, 91 N.Y.2d 382, 402, 671 N.Y.S.2d 406, 694 N.E.2d 407, 417 (1998)).

### 2. Standing Analysis

■ M.J. Entertainment has standing to pursue its claim under Count I. First, if its allegations are true, it has suffered an "injury in fact." It is unable to offer topless dancing as entertainment at its business establishment and it alleges that it cannot relocate to another area within the municipality where it can do so.[3] Second, M.J. Entertainment's injury is traceable to the challenged action of Mount Vernon—it cannot run a topless bar at its current location or relocate to another location within Mount Vernon because of the municipality's Zoning Code.

Redressability is the most tentatively established of the three standing requirements. M.J. Entertainment suggests that should this Court find in its favor, it will be allowed to offer topless dancing at The Starlight. Were this true, of course, redressability would be clear. But a finding that the Mount Vernon Zoning Code unreasonably limits alternative avenues of communication would not necessarily give M.J. Entertainment the right to offer topless dancing at The Starlight. Mount Vernon could amend its Zoning Code, for example, to allow topless dancing everywhere in the city other than the 500 foot

radius around The Starlight. Whether or not such a course of action would run afoul of some other law, it certainly would provide for "alternative avenues of communication."

Nonetheless, a decision in M.J. Entertainment's favor would redress its injury. If this Court were to find that the Mount Vernon Zoning Code does not provide for alternative avenues of communication, Mount Vernon would have to amend its Zoning Code to do just that—provide for alternative avenues of communication. And once it did so, M.J. Entertainment's injury would necessarily be redressed in one of two ways. First, in providing for alternative avenues of communication, Mount Vernon might allow topless dancing in a portion of the city that includes The Starlight's present location. Second, Mount Vernon might allow topless dancing in a portion of the city that did not include The Starlight's present location, but to which The Starlight might relocate. Plaintiff thus has standing to mount a challenge to the constitutionality of Mount Vernon's Zoning Code under *City of Renton.*

### C. Plaintiff Lacks Standing to Prosecute Count II

#### 1. The Substantive Claim

In Count II, M.J. Entertainment challenges the "special permit use" requirements of Section 267–24.[4] As explained

---

**3.** For purposes of this motion, the material allegations of the Complaint (i.e. that the Mount Vernon Zoning Code amounts to a total ban on adult entertainment uses in the municipality) are accepted as true. *See Lerman v. Bd. of Elections in City of New York*, 232 F.3d 135, 142 (2d Cir.2000). Additionally, at the hearing on the motion, M.J. Entertainment also submitted the declaration of Joseph Defreitas, a stockholder of M.J. Entertainment, in which he states that the Mount Vernon Zoning Code has stymied plaintiff's efforts to seek an alternative location where it

can run a topless bar. [DeFreitas Decl. ¶ 4]. Of course, a motion to dismiss is directed to the four corners of the pleading, and extraneous material is not ordinarily relevant. However, the DeFreitas Declaration confirms my conclusion that the Complaint, read most generously to plaintiff, states a claim for relief, and that plaintiff has standing to pursue the claim.

**4.** The "special permit use" provisions of the Mount Vernon Code are also set out in Sections 267–25, 267–26, and 267–28.

above, that provision requires, among other things, that (1) a party seeking a special use permit submit an application to the Board, (2) the Board hold a hearing, and (3) the Board apply certain substantive standards in deciding whether to accept or reject the application. M.J. Entertainment argues that Section 267–24 violates the First Amendment because it fails to comply with the safeguards that apply to the licensing of speech. More specifically, "a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150–51, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969), *quoted in Charette v. Town of Oyster Bay*, 159 F.3d 749, 753 (2d Cir. 1998); *see also FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (finding Dallas's adult-business licensing scheme to be an unlawful prior restraint).

### 2. Standing Analysis

■ M.J. Enterprises does not have standing to prosecute Count II. It fails to satisfy two of Article III's three requirements—causation and redressability. M.J. Entertainment's injury in fact—its inability to open a bar at its present location or find a site to which it can relocate—cannot fairly be traced to the procedures required to obtain a special use permit. First, those procedures did not cause M.J. Entertainment to be unable to open a topless bar at its present location—those procedures do not apply to the "CB" Zoning District where The Starlight is located. Second, M.J. Entertainment admits that it is the city's failure to provide alternative

avenues of communication that has prevented it from relocating. Any argument that its inability to relocate is due to the "chilling effect" of the special use permit procedures is too attenuated to satisfy Article III's causation requirement. And a ruling by this Court invalidating the "special permit use" provisions of the Zoning Code would not redress plaintiff's injury: Plaintiff will neither be able to open a topless bar nor relocate, due to the alleged lack of alternative avenues of communication that are the subject of Count I.

M.J. Entertainment argues in its motion papers that it has standing under Count II because, if the Court finds in its favor on Count I, it will then be subject to the "special permit use" requirements of Section 267–24. In other words, plaintiff claims its standing is contingent on a finding that the Mount Vernon zoning scheme fails to provide alternative avenues of communication.

■ Even were it true that M.J. Entertainment would be eligible to apply for a special permit automatically if it prevails on Count I—a proposition that I do not readily accept—this argument fails. A plaintiff must establish standing for each separate claim asserted. *See Bowen v. First Family Financial Servs., Inc.*, 233 F.3d 1331, 1339 (11th Cir.2000); *Comer v. Cisneros*, 37 F.3d 775, 788 (2d Cir.1994); 13 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3531 (2d ed. Supp.2002). ("A party with standing to advance one claim may lack standing to advance other claims."). M.J. Entertainment's attempt to forward the goal of judicial economy, commendable as it may be, cannot contravene Article III.[5]

---

**5.** M.J. Entertainment explained to the Court at oral arguments that it alleged Count II in part so that, in the event that this Court

eventually found in its favor on Count I, Mount Vernon could not oppose any future claims on *res judicata* grounds. Dismissal of

At oral arguments, M.J. Entertainment suggested that it has standing to pursue its Count II claim because (1) it makes a facial challenge to Mount Vernon's licensing scheme; and (2) standing requirements are less stringent in the context of facial challenges to overbroad statutes. To support its position, plaintiff directed the Court's attention to *CR of Rialto, Inc. v. City of Rialto*, 975 F.Supp. 1254 (C.D.Cal. 1997). In that case, CR of Rialto argued that the city's zoning ordinance, which required that an applicant for an adult business obtain a "conditional development permit," violated the First Amendment because it constituted an unlawful prior restraint under *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988).[6] The court found that plaintiff had standing to challenge the "conditional development permit" requirement even though it, like M.J. Entertainment, owned an establishment that was located in a zone where it could not even apply for such a permit. The court admitted that CR of Rialto's claim that it had standing "based on a hypothetical desire to relocate elsewhere in the City is somewhat tenuous." *Id.* at 1259. The court ruled, however, that CR of Rialto "does have standing on the basis of its assertion that it is currently being chilled as to its First Amendment rights to free expression on its efforts to seek alternative sites to [its present] premises because of the alleged unconstitutionality of the City's regulation of adult business." *Id.*

The Supreme Court has held that general standing requirements are to be relaxed in the context of First Amendment over-

breadth claims. *See Forsyth County v. Nationalist Movement*, 505 U.S. 123, 129–30, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992); 13 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3531.9 (2d ed. 1987 & Supp.2002). A party need not have applied for a license, for example, in order to mount a First Amendment facial challenge to a licensing scheme. *See City of Lakewood*, 486 U.S. at 755–56, 108 S.Ct. 2138. Similarly, a party may, in certain circumstances, assert the First Amendment rights of third parties in the context of overbreadth challenges. *See Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). These "exceptions" to prudential standing, however, do not eviscerate Article III's requirements; neither do they provide a basis to sustain M.J. Entertainment's claim.

First, while a party can challenge a licensing scheme without having applied for a license, that party must be subject to the law that establishes the licensing scheme. As the Supreme Court explained in *City of Lakewood*, "when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, *one who is subject to the law* may challenge it facially without the necessity of first applying for, and being denied, a license." 486 U.S. at 755, 108 S.Ct. 2138 (emphasis added). Mount Vernon's "special permit use" licensing scheme does not apply to M.J. Entertainment; plaintiff is not "subject to" Mount Vernon's licensing scheme. Only those who seek to establish an adult entertainment business in the "I" Zoning District may apply for such a license.

Count II for lack of standing, however, undermines any such argument.

**6.** Mount Vernon urged at oral arguments that *CR of Rialto* supports its argument that M.J. Enterprises lacks standing on Count I. But the *CR of Rialto* court limited the proceedings

only to plaintiff's facial challenge to the zoning ordinance. In Count I, M.J. Entertainment challenges the city's Zoning Code as applied, on the ground that it does not provide for alternative avenues of communication. Therefore, *CR of Rialto* is inapposite.

Second, M.J. Entertainment may not assert an overbreadth claim on behalf of third parties. Under that exception to general standing rules, a party may bring a facial challenge to a statute as overbroad, even if the statute, as applied to that party, was constitutional. *See, e.g., New York v. Ferber*, 458 U.S. 747, 768–69, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) ("[W]e have allowed persons to attack overly broad statutes even though the conduct of the person making the attack is clearly unprotected and could be proscribed by a law drawn with the requisite specificity."); *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 59–60, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). Here, Section 267–24 of the Zoning Code does not in any way apply to M.J. Entertainment. The Starlight is located in the "CB" Zoning District, where one cannot apply for a "special use permit" to operate an adult business.

All this goes to saying that the First Amendment "exceptions" to prudential standing rules do not relieve M.J. Entertainment of its obligation to satisfy Article III's constitutionally-mandated minimum standing requirements. Plaintiff fails to satisfy two of those three requirements— causation and redressability. For these reasons, I decline to follow the *CR of Rialto* court's holding.

The facts of this case are far more similar to a case cited in *CR of Rialto, S & G News, Inc. v. City of Southgate*, 638 F.Supp. 1060 (E.D.Mich.1986), and I agree with that decision. In *S & G News*, the City of Southgate's zoning ordinance provided that adult uses: (1) were only allowed in the C–3 zoning district, (2) had to comply with certain locational requirements (e.g., could not be within 500 feet of a residential building), and (3) had to be specially applied for and approved. *Id.* at 1061. Plaintiff wanted to open an adult use establishment but was located in the C–2 zoning district, where adult uses were categorically prohibited. The court entertained plaintiff's claim that the city's zoning ordinance did not provide alternative avenues of communication, but concluded that plaintiff lacked standing to challenge the special application and approval procedures that applied to those who wanted to establish an adult use in the C–3 zoning district. *Id.* at 1066. The court did not address whether plaintiff lacked Article III standing, but rather decided that plaintiff did not fall within the First Amendment "exceptions" to prudential standing requirements. *Id.* at 1066–67.

Like the court in *S & G News*, I find that M.J. Entertainment may proceed with its claim that the Mount Vernon Zoning Code does not provide alternative avenues of communication, but I must dismiss Count II for lack of standing.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss is granted as to Count II and denied as to Count I.

This is the decision and order of the Court